IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON DIVISION

| | |
|---|---|
| TIMORIA MCQUEEN SABA, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | **COMPLAINT** |
| THE AMERICAN COLLEGE OF : | |
| OBSTETRICIANS AND : | **JURY TRIAL DEMANDED** |
| GYNECOLOGISTS, : | |
| : | |
| Defendant. : | |

## INTRODUCTION

Plaintiff Timoria McQueen Saba brings this private right of action against Defendant The American College of Obstetricians and Gynecologists pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. ("Title VI"). The American College of Obstetricians and Gynecologists is in violation of Title VI as it has intentionally discriminated against the Plaintiff on the basis of race by denying her the opportunity to participate as a member of one of its integral planning or advisory bodies. Congress enacted Title VI to address the serious problems created and perpetuated by the "injustices and humiliations of racial and other discriminations." H.R. Rep. No. 914, 88th Cong. 1st Sess., 18 (1963). In the United States, racial discrimination is responsible for disparities in healthcare outcomes for Black women, in particular the critical statistic that Black women are 3 to 4 times more likely to die from birth and pregnancy related complications than White women.[1]

---

[1] Centers for Disease Control and Prevention, *Reproductive Health*, https://www.cdc.gov/reproductivehealth/maternalinfanthealth/pregnancy-relatedmortality.htm (last visited Feb. 28, 2020)

1

## PARTIES

1. The Plaintiff, Timoria McQueen Saba ("Ms. McQueen Saba"), is a natural person residing at 17 Brookside Park, Milton, Massachusetts.

2. The Defendant, The American College of Obstetricians and Gynecologists ("ACOG") is a non-profit corporation with a principal place of business located at 409 12th Street SW, Washington, District of Columbia.

## JURISDICTION

3. This action arises under 42 U.S.C. § 2000d *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## FACTUAL BACKGROUND

4. At all times relevant to the allegations in this Complaint, Ms. McQueen Saba was a maternal health advocate, speaker and writer with a focus on mental and physical trauma due to childbirth and pregnancy. Through her work, she has connected with thousands of women across the world who have experienced birth and pregnancy complications, and the lingering psychological effects. Ms. McQueen Saba, a Black woman, suffered a near fatal hemorrhage, after childbirth in April 2010 and as a result was later diagnosed with Post-Traumatic Stress Disorder. Ms. McQueen Saba uses her lived experience to spread awareness and education about maternal mortality and morbidity, postpartum mood disorders, disparities in outcomes and inequity in the healthcare system.

5. At all times relevant to the allegations in this Complaint, Ms. McQueen Saba was the Coordinator of Resources and Support for Postpartum Support International in the Boston Metro West and Central areas for Massachusetts. Postpartum Support International is an organization whose purpose is to increase awareness among public and professional communities about the

emotional changes that women experience during pregnancy and postpartum. In her role with Postpartum Support International, Ms. McQueen Saba connected women suffering from postpartum mood disorders and their families to local therapists and support groups. Ms. McQueen Saba was also a member of the Postpartum Support International President's Advisory Council.

6. From February 2017 through November 2018, Ms. McQueen Saba facilitated a peer to peer mother's support group, called "Emotional Wellbeing After Baby", at Milford Regional Hospital in Milford, Massachusetts.

7. In 2017, Ms. McQueen Saba was appointed by Massachusetts State Representative James O'Day to a House chair seat on the Senator Ellen Story Special Commission on Postpartum Depression.

8. Ms. McQueen Saba also served as the Project Lead for Patient Voice and Engagement for the Perinatal-Neonatal Quality Improvement Network of Massachusetts.

9. Ms. McQueen Saba was also a member of the Massachusetts Title V Maternal and Child Health Block Grant Advisory Committee.

10. Ms. McQueen Saba has been a member of the Johnson & Johnson Coalition for Optimal & Equitable Maternal Health since May 2019.

11. Ms. McQueen Saba has served as Co-Chair of the National Quality Forum Maternal Mortality and Morbidity Project Committee since December 2019.

12. Ms. McQueen Saba has served as an Advisor to the National Maternal Health PCOR Network since February 2020.

13. ACOG was founded in 1951, has more than 58,000 members, and identifies itself as the specialty's premier professional membership organization dedicated to the improvement of women's health.

14. On May 4, 2019, Ms. McQueen Saba was a panel speaker at ACOG's Annual Clinical and Scientific Meeting in Nashville, Tennessee. The panel discussion was titled "Speaking out on the American Maternal Health Crisis: Rethinking our Approach."

15. ACOG administers a planning and advisory board called the Council on Patient Safety in Women's Health Care ("Council on Patient Safety") and funds it in whole or in part through federal grants.

16. The Council on Patient Safety claims that its mission is to "continually improve patient safety in women's health care through multidisciplinary collaboration that drives culture change."[2]

17. Following this panel discussion at the 2019 Annual Meeting, Ms. McQueen Saba was approached by employees of ACOG who solicited her participation in the formation of a Patient Advisory Group, which was to be a sub-group within the Council on Patient Safety.

18. On June 12, 2019, Ms. McQueen Saba received an email from Andrea Carillo of ACOG, inquiring, "Since you are such a strong patient advocate leader we hoped that you would consider working with us as we develop and manage this [Patient Advisory Group]?"

19. Over the ensuing four months, Ms. McQueen Saba worked towards developing the Patient Advisory Group with other ACOG employees and was told that she would be the Chair of the group upon its launch.

---

[2] Council on Patient Safety in Women's Health Care, *About Us*, https://safehealthcareforeverywoman.org/about-us/ (last visited Feb. 28, 2020).

20. At the same time that Ms McQueen Saba was working on the formation of the Patient Advisory Group, she was also courted by ACOG employees to apply for a vacant Patient Advocate seat on the Council on Patient Safety.  The Patient Advocate seat was an unpaid, volunteer position.

21. There are two Patient Advocate seats on the Council on Patient Safety and neither seat has ever been held by a Black individual.

22. The Council on Patient Safety is comprised of 19 maternal health organizations, none of which represent Black maternal health issues exclusively.

23. Ms. McQueen Saba was invited by Anya Goodman, employed by ACOG as a Program Assistant for Strategic Health Care Initiatives, to attend the Council on Patient Safety meeting that took place July 29-30, 2019 at ACOG's headquarters in Washington, D.C.  Ms. McQueen Saba accepted the invitation and attended the meeting.  Her travel expenses, including lodging and flights, were paid for by ACOG.

24. During the Council on Patient Safety meeting in July 2019, certain Council members were visibly bothered by comments and questions that Ms. McQueen Saba asked about racism and disparities in medical outcomes.  In one instance, the Chair of the Council, Dr. Sam Smith, cut Ms. McQueen Saba off from talking, stating that 'your time is up, we've heard enough.'"  During a break in the meeting ACOG employees Lauren Lemieux, Marcella Labellarte and Anya Goodman approached Ms. McQueen Saba in person and apologized for the way that she was treated during the meeting.

25. Ms. McQueen Saba was also invited by Ms. Goodman to attend the Alliance for Innovation on Maternal Health ("AIM") meeting in Falls Church, Virginia, on July 31, 2019. Ms. McQueen Saba was asked by ACOG to be a presenter at the AIM meeting and this was

coordinated by Karmah McIlvain, employed by ACOG as a Program Assistant for AIM. Ms. McQueen Saba was offered a $500 honorarium by ACOG for presenting at the meeting nearly three weeks later on August 19, 2019.

26. Ms. McQueen Saba was told by ACOG employees that any vote required to place her in the Patient Advocate seat on the Council on Patient Safety was just a formality.

27. On September 19, 2019 Ms. McQueen Saba submitted her application for the vacant Patient Advocate seat on the Council on Patient Safety.

28. Shortly before submitting her application, Ms. McQueen Saba alerted Lauren Lemieux, employed by ACOG as Program Director for Strategic Health Care Initiatives, and other ACOG employees, that a member of the Council on Patient Safety had perpetuated racist ideology in describing why maternal health outcomes are worse for Black women than White women. Ms. McQueen Saba read the language used by the member to Ms. Lemieux over the phone. Ms. McQueen Saba asked Ms. Lemieux if she wanted her to email the language to her so that she could see it for herself, and Ms. Lemieux declined. On September 13, 2019, Ms. Lemieux communicated in an email to Ms. McQueen Saba that,

> I wanted to be sure I closed the loop in letting you know that I did discuss what you shared candidly with leadership here at ACOG and that they appreciate being aware of the context/situation but do not see a place for ACOG or the Council to play a role/act. We believe that your leadership in the establishment of our Patient Advisory Group will help us all to be better and do better.

A true and accurate copy of this email is attached to this Complaint as Exhibit 1.

29. On October 29, 2019, Ms. McQueen Saba was informed by email by Ms. Lemieux that the Council on Patient Safety decided to not elect her to fill the vacant Patient Advocate seat. The pretextual explanation given for the decision in Ms. Lemieux's email was that the Council on Patient Safety wanted to hold open the Patient Advocate seat until the Patient Advisory Group

was established and its initial group members were selected.  Ms. Lemieux further wrote in the email,

> The Council hopes to continue to work with you on the development of the [Patient Advisory Group].  However, I understand that this decision means that you would not have the opportunity to potentially hold the Council Voting Member seat for an additional period of indeterminate time and recognize that this extended timeline may not be amendable [sic] to your personal and professional goals.

A true and accurate copy of this email is attached to this Complaint as Exhibit 2.

30. Later in the day on October 29, 2019, Ms. Lemieux sent another email correspondence to Ms. McQueen Saba offering an alternative pretextual explanation for the Council on Patient Safety's decision to not accept her for the vacant Patient Advocate seat.  This pretextual explanation suggested that ACOG's active solicitation of Ms. McQueen Saba individually as opposed to having an "open-call" for nominees for the Patient Advocate seat was a deviation from the "traditional nomination process."  A true and accurate copy of this email is attached as Exhibit 3.

31. The next day, October 30, 2019, Ms. Lemieux sent an email to Ms. McQueen Saba stating,

> While the decision reached by the Council isn't conducive to continuing to work together at this time – which I completely understand – I do strongly believe that the individuals on the Council are committed to improving outcomes and working to eliminate disparities.  I have a horoscope that I cut out and taped on my computer a few years ago that reads:  'one mustn't think that simply because you are moving slowly, you aren't moving at all' and that has applied in my work a thousand times since and applies now.

A true and accurate copy of this email is attached as Exhibit 4.

32. On November 8, 2019, Ms. McQueen Saba sent a letter to the Chief Executive Officer of ACOG, Maureen D. Phipps, MD, MPH, notifying her of the intentional racial

discrimination that was inflicted upon her by ACOG.  In the letter, Ms. McQueen Saba wrote,

> As the CEO of ACOG, you are in the position to take action when injustices like this occur.  This is not about my 'disappointment', over my membership being denied.  This is about the infrastructures that are in place, in many organizations, which are set up to deny people of color opportunities to lead this work.  People of color are often asked to speak, participate in meetings and contribute to the development of groups like the [Patient Advisory Group].  Rarely are we given opportunities to be compensated at the rate we deserve and/or given the title we deserve for our contributions, yet we give of ourselves over and over again because we understand that we are in the middle of a crisis.  Black women are dying every day because they are being dismissed and disrespected by their healthcare providers.

A true and accurate copy of this Correspondence is attached as Exhibit 5.

33. To date, Ms. McQueen Saba has not been selected for the Patient Advocate seat on the Council on Patient Safety.

34. ACOG has intentionally discriminated against Ms. McQueen Saba based on her race in refusing to allow her to participate as a Patient Advocate on the Council on Patient Safety.

35. As a result of ACOG's intentional discrimination, Ms. McQueen Saba has suffered emotional distress requiring medical treatment.

### COUNT I (VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT)

36. The Plaintiff restates each and every allegation stated above, as though each and every allegation were set forth herein.

37. ACOG discriminated against Ms. McQueen Saba in refusing to allow her to be elected to the Council on Patient Safety.

38. ACOG's discrimination was intentional.

39. The discrimination was a substantial or motivating factor for ACOG's actions.

40. ACOG is a recipient of federal funds, including grants from the Health Resources & Services Administration, which is an agency of the U.S. Department of Health and Human Services.

41. As a result of ACOG's violation of Title VI of the Civil Rights Act, Ms. McQueen Saba has been injured and seeks an injunctive remedy that (a) installs her on the Council on Patient Safety in the Patient Advocate seat, (b) installs her as the Chair of the Patient Advisory Group, (c) orders the creation by ACOG of a paid leadership position on the Council on Patient Safety to be held by a Black woman; (d) order ACOG to fill member seats on the Council on Patient Safety with members that represent maternal health issues on behalf of Black women, Native American women, Latina women, Asian women and members of the Lesbian, Gay, Bisexual and Transgender ("LGBTQ") community; (e) and all other available relief allowed under law.

## COUNT II (PROMISSORY ESTOPPEL)

42. The Plaintiff restates each and every allegation stated above, as though each and every allegation were set forth herein.

43. ACOG promised Ms. McQueen Saba that she would be given a Patient Advocate seat on the Council on Patient Safety in connection with her work on forming the Patient Advisory Group.

44. ACOG reasonably expected that this promise would induce Ms. McQueen Saba to devote substantial time and effort towards forming the Patient Advisory Group.

45. ACOG's promise did induce Ms. McQueen Saba to devote substantial time and effort towards forming the Patient Advisory Group.

46. Injustice can be avoided only by enforcement of ACOG's promise.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that this Honorable Court:

a. Enter judgment for the Plaintiff against the Defendant on all counts;

b. Award the Plaintiff all available equitable relief and compensatory damages; and

c. Award the Plaintiff attorney's fees, costs, interest, and all other relief as the Court deems just and proper.

**THE PLAINTIFF DEMANDS TRIAL BY JURY**

    Respectfully submitted,

    Plaintiff,
    Timoria McQueen Saba,

    By her Attorney,

    */s Benjamin S. Klein*
    Benjamin S. Klein, Esq.
    BBO # 675769
    Klein Law PLLC
    747 Main Street, Suite 306
    Concord, MA 01742
    P:  (978) 254-6496
    F:  (978) 254-6498
    bklein@kleinlawconcord.com

Dated:  February 28, 2020